# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DEREK A. JOHNSON** | **CIVIL ACTION** |
| **versus** | **NO. 12-1615** |
| **N. BURL CAIN, WARDEN** | **SECTION: "F" (1)** |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Derek A. Johnson, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana. On April 25, 1995, he was convicted of second degree murder

under Louisiana law.[1] On May 19, 1995, he was sentenced to a term of life imprisonment without benefit of probation, parole, or suspension of sentence.[2] On November 27, 1996, the Louisiana Fourth Circuit Court of Appeal affirmed his conviction and sentence.[3] The Louisiana Supreme Court then denied his related writ application on May 16, 1997.[4]

On September 15, 1998, petitioner filed an application for post-conviction relief with the state district court.[5] That application was denied on April 20, 1999.[6] His related writ applications were likewise denied by the Louisiana Fourth Circuit Court of Appeal on August 11, 1999,[7] and by the Louisiana Supreme Court on March 31, 2000.[8]

---

[1] State Rec., Vol. I of IV, minute entry dated April 25, 1995.

[2] State Rec., Vol. I of IV, minute entry dated May 19, 1995.

[3] State v. Johnson, No. 95-KA-1832 (La. App. 4th Cir. Nov. 27, 1996); State Rec., Vol. I of IV.

[4] State v. Johnson, 693 So.2d 796 (La. 1997) (No. 97-KO-0074); State Rec., Vol. II of IV.

[5] State Rec., Vol. III of IV. The United States Fifth Circuit Court of Appeals has held that federal *habeas* courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana prisoner's *pro se* state court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system." Causey v. Cain, 450 F.3d 601, 607 (5th Cir. 2006). Here, that date cannot be gleaned with certainty from the record; however, because petitioner signed the application on September 15, 1998, he obviously placed it in the mail no earlier than that date.

[6] State Rec., Vol. III of IV, minute entry dated April 20, 1999.

[7] State v. Johnson, No. 99-K-1761 (La. App. 4th Cir. Aug. 11, 1999); State Rec., Vol. III of IV.

[8] State *ex rel.* Johnson v. State, 759 So.2d 65 (La. 2000) (No. 1999-KH-2740); State Rec., Vol. III of IV.

On an unknown date in 2009, petitioner filed another application for post-conviction relief with the state district court.⁹ That application was denied on June 3, 2011.¹⁰ His related writ applications were then likewise denied by the Louisiana Fourth Circuit Court of Appeal on July 29, 2011,¹¹ and by the Louisiana Supreme Court on April 27, 2012.¹²

On May 27, 2012, petitioner filed the instant federal *habeas corpus* application.¹³ The state argues that petitioner's federal application is untimely.¹⁴ The state is correct.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") established a one-year statute of limitations for the filing of federal *habeas corpus* applications. The method for calculating a petitioner's one-year period is set forth in 28 U.S.C. § 2244(d), which provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the

---

⁹ State Rec., Vol. IV of IV. The exact date of filing is not reflected in the state court record. However, in his related writ application filed with the Louisiana Supreme Court in Case No. 11-KH-1852, which is included in Volume IV of the state court record, petitioner stated that the post-conviction application was filed in 2009. For the purposes of this decision, the Court will accept that representation as true.

¹⁰ State Rec., Vol. IV of IV, minute entry dated June 3, 2011.

¹¹ State v. Johnson, No. 2011-K-0925 (La. App. 4th Cir. July 29, 2011); State Rec., Vol. IV of IV.

¹² State *ex rel.* Johnson v. State, 86 So.3d 619 (La. 2012) (No. 2011-KH-1852); State Rec., Vol. IV of IV.

¹³ Rec. Doc. 1. "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court." Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003). Petitioner signed his application on May 27, 2012; therefore, it could not have been delivered to prison authorities for mailing any earlier than that date.

¹⁴ Rec. Doc. 20.

judgment of a State court. The limitation period shall run from the latest of –

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

For the following reasons, petitioner's federal application is not timely under any of those provisions.

### I.  28 U.S.C. § 2244(d)(1)(A)

As noted, under Subsection A, a petitioner must bring his federal *habeas corpus* claims within one (1) year of the date on which his underlying criminal judgment became "final." On that point, the United States Fifth Circuit Court of Appeals has explained:

> The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court. Roberts v. Cockrell, 319 F.3d 690, 693 (5th Cir. 2003).

Butler v. Cain, 533 F.3d 314, 317 (5th Cir. 2008).


The Louisiana Supreme Court denied petitioner's writ application on direct review on May 16, 1997. As a result, for AEDPA purposes, his state criminal judgment became final, and his federal limitations period therefore commenced, on August 14, 1997. See id. at 317-18. That limitations period then expired one year later on August 14, 1998, unless the deadline was extended through tolling.

The Court first considers statutory tolling. Regarding the statute of limitations, the AEDPA expressly provides: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). However, petitioner had no such applications pending at any time during the applicable one-year period, and so he clearly is not entitled to statutory tolling.[15]

The Court next considers equitable tolling. The United States Supreme Court has held that AEDPA's limitations period is subject to equitable tolling. Holland v. Florida, 130 S.Ct. 2549, 2560 (2010). However, "a petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Id. at 2562 (internal quotation marks omitted); see also Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998) (holding that the AEDPA's statute of limitations can be

---

[15] Although petitioner subsequently filed a state post-conviction application on September 15, 1998, as well as a second such application in 2009, applications filed *after* the expiration of the federal statute of limitations have no bearing on the timeliness of a federal application. See Scott v. Johnson, 227 F.3d 260, 263 (5th Cir. 2000); Magee v. Cain, Civ. Action No. 99-3867, 2000 WL 1023423, at *4, aff'd, 253 F.3d 702 (5th Cir. 2001); Williams v. Cain, Civ. Action No. 00-536, 2000 WL 863132, at *2 (E.D. La. June 27, 2000). Simply put, once the federal limitations period expired, "[t]here was nothing to toll." Butler, 533 F.3d at 318.

equitably tolled "in rare and exceptional circumstances"). A petitioner bears the burden of proof to establish entitlement to equitable tolling. Alexander v. Cockrell, 294 F.3d 626, 629 (5th Cir. 2002). In the instant case, petitioner has brought forth no evidence demonstrating that he is entitled to such tolling, and this Court knows of no reason that would support equitable tolling of the statute of limitations.[16]

In that petitioner is entitled to neither statutory nor equitable tolling, his federal application for *habeas corpus* relief had to be filed on or before August 14, 1998, in order to be timely under 28 U.S.C. § 2244(d)(1)(A). Because his federal application was not filed until May 27, 2012, it is untimely under that subsection.

## II. 28 U.S.C. § 2244(d)(1)(B), (C), and (D)

Section 2244(d)(1) has three other subsections which delay the commencement of the federal limitations period based on specified events, but those subsections do not render petitioner's federal application timely. Subsection B delays commencement of the limitations period where filing was delayed due to a state-created impediment; petitioner does not allege that such an impediment existed here. Subsection C delays commencement when a petitioner's claim is based on a newly recognized constitutional right which has been made retroactively applicable

---

[16] Out of an abundance of caution, the Court notes that petitioner claims that he is actually innocent. However, that has no relevance to the issue of equitable tolling. The United States Fifth Circuit Court of Appeals has expressly held: "[A] petitioner's claims of actual innocence are relevant to the timeliness of his petition if they justify equitable tolling of the limitations period. We have previously held that they do not." Cousin v. Lensing, 310 F.3d 843, 849 (5th Cir. 2002); see also Tate v. Parker, 439 Fed. App'x 375, 376 n.1 (5th Cir. 2011); Price v. Cain, Civ. Action No. 11-071, 2011 WL 2937285, at *4 (E.D. La. July 19, 2011); Mattox v. Cain, Civ. Action No. 08-4295, 2011 WL 291283 (E.D. La. Jan. 25, 2011).

to cases on collateral review; petitioner's claims likewise do not fall within that provision. Subsection D delays commencement where there was a delay in discovering the "factual predicate" of a petitioner's claims. Because petitioner makes references in his application to "newly discovered evidence," the Court will assume that he is arguing that the provisions of Subsection D apply. However, even if Subsection D applies, petitioner's federal application is untimely for the following reasons.

In the instant case, petitioner was convicted of the second degree murder of Terry Gills. On direct appeal, the Louisiana Fourth Circuit Court of Appeal summarized the facts of the case as follows:

> Terry Gills was shot and killed during the early morning hours of June 23, 1994. Anthony Rogers was on his way home when he stopped in the Melpomene Project to talk to his friend, Terry Gills. While they were talking, two young men whom they knew from around the housing project walked up to them and started shooting. One of the men was armed with an AK-47 semi-automatic rifle and the other a 9mm handgun. Both Rogers and Gills were shot. Gills was carrying a revolver in his pocket and drew the gun and fired back. Rogers and Gills fled the scene in separate directions. Rogers had difficulty running due to a gunshot wound to his leg. He made it to the neutral ground of the 2400 block of Martin Luther King Blvd. Gills ran to the New Orleans Police Department's Sixth District station, about one and a half blocks away, where he collapsed after uttering the name "Cornell," when an officer asked him who shot him.
> A firearms expert report was entered in evidence upon a stipulation. Four spent 9mm casings, one spent 7.62 x 39mm casing, and one copper bullet jacket were found near the scene. The four 9mm casings had been fired by the same firearm. No firearms were ever recovered.
> Both victims were taken to Charity Hospital. Gills died of a single through and through gunshot wound to the chest with injury to his lung(s). Rogers had surgery on his leg and spent two months in the hospital. On the day of the shootings, New Orleans Police

Department Detective Louis Berard interviewed Rogers in the hospital. During the interview, Rogers gave him the first name of one perpetrator, Cornell, and the nickname of the other, "Diesel." Det. Berard contacted officers familiar with the neighborhood who advised him that the defendant used the nickname "Diesel." Officer Berard then prepared a photographic lineup from which Rogers picked the defendant as the one who had fired the AK47 rifle and he was subsequently arrested. Almost one year after the shooting, the police learned the name of the second assailant, Cornell Larkin, and Rogers identified Larkin as the other shooter from a photographic linup [sic].[17]

Petitioner now argues that "newly discovered evidence" proves that he was wrongly convicted of the second degree murder of Gills. Specifically, long after petitioner's conviction became final, he discovered that his co-defendant, Cornell Larkins, pleaded guilty to manslaughter for his role in this crime on June 17, 1998.[18] However, for the following reasons, petitioner's belated discovery of that fact does not render his federal application timely.

Even when Subsection D applies, the limitations period runs not from the date on which the factual predicate of a petitioner's claim was in fact discovered, but rather from "the date on which the factual predicate of the claim or claims presented *could have been discovered through the exercise of due diligence*." 28 U.S.C. § 2244(d)(1)(D) (emphasis added). Larkins' guilty plea was a matter of public record and, as such, was discoverable through the exercise of due diligence as of the date it was entered, i.e. June 17, 1998. See Harrison v. Anglin, No. 10 C 4987, 2011 WL 2038767, at *2 (N.D. Ill. May 24, 2011); Harkless v. Weger, No. 07-4001, 2007 WL 2700152, at

---

[17] State v. Johnson, No. 95-KA-1832, at pp. 1-2 (La. App. 4th Cir. Nov. 27, 1996); State Rec., Vol. I of IV

[18] See State Rec., Vol. I of IV, Docket Master entry dated June 17, 1998.

*3 (C.D. Ill. Aug. 23, 2007). Therefore, even under Subsection D, petitioner's federal limitations period would have commenced no later than that date.

Eighty-nine (89) days of the federal limitations period would then have elapsed prior to being tolled on September 15, 1998, by petitioner's filing of his first post-conviction application. Tolling would thereafter have continued uninterrupted for the duration of the post-conviction proceedings, so long as he sought supervisory review in a timely manner. Grillette v. Warden, Winn Correctional Center, 372 F.3d 765, 769-71 (5th Cir. 2004). Therefore, assuming that petitioner's related supervisory writ applications were timely filed, tolling would have ceased no later that March 31, 2000, when the Louisiana Supreme Court denied relief.[19]

At that point, petitioner would have had two-hundred seventy-six (276) days of the federal limitations period remaining. As a result, he would have had only until January 2, 2001,[20] to file his federal application, unless the limitations period was again tolled by a properly filed application for state post-conviction or other collateral review. Because he had no other such applications pending at any time on or before January 2, 2001, he clearly would not be entitled to

---

[19] A petitioner receives no additional tolling credit for the period during which he could have sought review by the United States Supreme Court with respect to the denial of post-conviction relief. Lawrence v. Florida, 549 U.S. 327, 332 (2007); Ott v. Johnson, 192 F.3d 510, 512-13 (5th Cir. 1999).

[20] The two-hundred-seventy-sixth day of this period actually fell on January 1, 2001. However, because that was a federal holiday, the deadline was extended through Tuesday, January 2, 2001. See Flanagan v. Johnson, 154 F.3d 196, 202 (5th Cir. 1998) ("We hold that [Fed.R.Civ.P.] 6(a) applies to the computation of the one year limitation period in § 2244(d) of AEDPA."); Fed.R.Civ.P. 6(a) (if the last day of an applicable period is a Saturday, a Sunday, a legal holiday, or a day when the clerk's office is inaccessible, the period runs until the end of the next day that is not one of those days).

further statutory tolling. Further, for the reasons previously explained, he has not established that he is entitled to equitable tolling.

Accordingly, under 28 U.S.C. § 2244(d)(1)(D), petitioner's federal application had to be filed no later than January 2, 2001, in order to be timely. Because his federal application was not filed until May 27, 2012, it is clearly untimely even under that subsection.

## **RECOMMENDATION**

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Derek A. Johnson be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[21]

New Orleans, Louisiana, this twelfth day of December, 2012.

        **SALLY SHUSHAN**
        **UNITED STATES MAGISTRATE JUDGE**

---

[21] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.